**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. <u>1:21-cv-325</u>

LAUNDRY FILMS, INC.,

     Plaintiff,

v.

DOES 1-14,

     Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Laundry Films, Inc. ("Plaintiff") file this Complaint against Defendants Does 1-14 ("Defendants") and alleges as follows:

## I.     NATURE OF THE ACTION

1.    This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act").

2.    The Plaintiff alleges that Defendants are liable for: (1) direct and contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501; and (2) violations under the Digital Millennium Copyright Act, 17 U.S.C. § 1202.

## II.     JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

20-025C

4.      Defendants either reside in, solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction. As such, Defendants have sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over them.

5.      According to publicly available Whois/RDAP records provided by the website of the American Registry of Internet Numbers ("ARIN"), the Internet Protocol ("IP") addresses of DOES 1-14 are assigned to the Colorado Internet Service Providers ("ISP") Charter Communications, Inc. ("Charter") and Private Internet Access ("PIA").

6.      Defendants DOES 1-11 and 14 used the Internet service of Charter and, as explained below, used said service of Charter to download, reproduce and distribute copies of Plaintiff's copyright protected motion picture, thereby purposefully directing their tortious conduct at Colorado and thus this District.

7.      Defendants DOES 12-13 registered for paid accounts for Virtual Private Network ("VPN") service with PIA and, as explained below, used said VPN service of PIA to download, reproduce and distribute copies of Plaintiff's copyright protected motion picture, thereby purposefully directing their tortious conduct at Colorado and thus this District.

8.      When registering for VPN service with PIA, each of the Defendants 12-13 agreed to be subject to jurisdiction of Courts in Colorado as shown below.

20-025C



9.      Plaintiff's injuries arise out of Defendant's forum-related activities, namely Defendants' infringements of Plaintiff's Work at IP addresses in this District and/or controlled by an ISP in this District.

10.      Further, Defendants 12-13 violated an express term of their registration agreement with PIA – distributing copyright protected content without the authority of owners such as the Plaintiff – as shown below.



always use protection®

HOW IT WORKS          DOWNLOAD          SUI

Agreement.

## CONDUCT

You agree to comply with all applicable laws and regulations in connection with use of the
Services. You must also agree that you and any other user that you have provided access
to will not engage in any of the following activities:

- Sending or receiving unsolicited and/or commercial emails in violation of law,
  promotional materials, "junk mail," "spam," "chain letters," or "pyramid schemes";
- Exploiting, possessing, producing, receiving, transporting, or distributing any illegal
  content, including but not limited to any sexually explicit depiction of children;
- Uploading, possessing, receiving, transporting, or distributing any copyrighted,
  trademark, or patented content which you do not own or lack written consent or a
  license from the content owner;

11.     Third party right holders, including Plaintiff, are third party beneficiaries to

the registration agreement between PIA and Defendants 12-13.  Indeed, the registration

agreement expressly mentions third party rights and benefits to third parties including

those of copyright holders intentionally and directly and third parties are the primary party

in interest as shown below.

20-025C


HOW IT WORKS     DOWNLOAD     SUPPOR

FROM THE FOREGOING RESTS ENTIRELY WITH YOU.

## INDEMNITY

Subscriber agrees to defend, indemnify and hold harmless PIA, its parent corporation,
officers, affiliates, directors, contractors, employees and agents, from and against any and
all claims, damages, obligations, losses, liabilities, costs or debt, and expenses (including
but not limited to attorney's fees) arising from:

- your use of and access to the Site and/or Services;
- your material breach of any term of this Agreement;
- your violation of any third party right, including without limitation any copyright, patent,
  trademark, property, or privacy right; or
- Any claim that your use caused damage or injury to any third party.

This defense and indemnification obligation will survive termination of this Agreement and
Your use of the Site.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c)
because: (a) all or a substantial part of the events or omissions giving rise to the claims
occurred in this District; (b) the Defendants reside or resided, and therefore can or could
be found, in this District; and/or (c) Defendants are subject to the court's personal
jurisdiction with respect to the present action.  Additionally, venue is proper in this District
pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendants or
Defendants' agents resides and/or can be found in this District.

### III.     PARTIES

### A.   The Plaintiff

13.     The Plaintiff is the owner of the copyrights in the screenplay and motion

20-025C

picture for movie *The Brass Teapot* ("Work"), respectively, as shown in Exhibit "1".

14.     Plaintiff is a corporation organized under the laws of the State of California, having a principal office in Los Angeles, California.

15.     Plaintiff's Work, which is the feature film debut of award-winning female director Ramaa Mosely, tells the story of a couple that finds a magical brass teapot capable of providing money.   The Work was nominated for the International Critics' Award (FIPRESCI) and Saturn Award.

## B.   The Defendants

16.     Upon information and belief, Defendants are individuals residing in Colorado.

17.     Each Defendant registered for an account with a website known as YTS ("YTS website") using an email address as shown in Exhibit "2".

18.     Each Defendant used said account to share a copy of the Work from an Internet Protocol ("IP") address as shown in Exhibit "3" to Declaration of Daniel Arheidt ("Arheidt Decl.").

19.     The YTS website is currently accessible at YTS.MX and was previously accessible at YTS.AM, YTS.AG and YTS.LT.

20.     The YTS website is known for distributing torrent files of copyright protected motion pictures.

20-025C





20-025C

21.    In stipulated judgments resolving lawsuits filed in the District of Hawaii, the operators of the YTS website, Senthil Segaran and Techmodo Limited, conceded that one or more third parties uploaded torrent files of various motion pictures to the YTS website and that the YTS website provided links for distributing the torrent files. *See Venice PI, LLC et al. v. NGUYEN DINH MANH, et al.*, 1:19-cv-169-LEK-KJM, Doc. #77; *Wicked Nevada, LLC vs. Senthil Vijay Segaran*, 1:19-cv-413-SOM-KJM, Doc. #25; and *HB Productions, Inc. vs. Senthil Vijay Segaran*, 1:19-cv-389-ACK-KJM, Doc. #51.

22.    The Defendants are members of a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm".  The particular file a BitTorrent swarm is associated with has a unique "hash" number and a file name.

23.    Upon information and belief, Each of the Defendants received at least a first notice styled per 17 U.S.C. 512(a) of the Digital Millennium Copyright Act ("DMCA notice") requesting the individual to stop infringement of a copyright protected Work via BitTorrent protocol.

24.    Defendants used their YTS accounts to download a torrent file associated with the Work *Brass Teapot*.

25.    Defendants used a BitTorrent Client to download, reproduce and share copies of the Work *Brass Teapot* under the file name "The Brass Teapot 2012 [BluRay] [720p] [YTS] [YIFY]" shortly thereafter from IP addresses associated with Colorado based ISPs as shown in Exhibit "3" of the Arheidt Decl.

26.    Defendants DOES 12-13 used IP addresses provided by the VPN service

20-025C

of PIA to try to conceal their illicit activities while downloading, reproducing and distributing copies of Plaintiff's Work.

27.    Defendants have ignored communications from Plaintiff's counsel via email requesting them to cease and desist their unlawful activity and pay a portion of Plaintiff's damages.

28.    The Colorado based ISP Charter Communications Inc. provides the Internet service for Defendants DOES 1-11 and 14 and the Colorado based ISP PIA provides the VPN Internet service used by Defendants DOES 12-13. The email provider Google provides the email service Defendants used to register for their accounts with YTS. Plaintiff intends to subpoena Google and these ISPs to learn the subscriber identity and IP address log information for Defendant DOES 1-14. Further discovery may be necessary in some circumstances to be certain of the identity of the proper Defendant. Plaintiff believes that information obtained in discovery will lead to the identification of each Defendants' true names and permit the Plaintiff to amend this Complaint to state the same. Plaintiff further believes that the information obtained in discovery may lead to the identification of additional infringing parties to be added to this Complaint as Defendants. Plaintiff will amend this Complaint to include the proper names and capacities when they have been determined. Plaintiff is informed and believes, and based thereon alleges, that the fictitiously named Defendants participated in and are responsible for the acts described in this Complaint and damages resulting therefrom.

### IV.    JOINDER

20-025C

29.     Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because, as set forth in more detail below, the Plaintiff asserts that the infringement of its Work complained of herein by each of the Defendants was accomplished by the Defendants using the same YTS website; and there are common questions of law and fact.  Moreover, the infringements of the Work complained of herein by each of the Defendants was part of a series of transactions over the course of a relatively short period of time, involving the exact same piece of the Work, and, upon information and belief, was accomplished by the Defendants acting in concert with each other.

## V.     FACTUAL BACKGROUND

### A.  The Plaintiff Owns the Copyrights to the Work

30.     The Plaintiff is the owner of the copyrights in the Work.  The Work is the subject of copyright registrations, and this action is brought pursuant to 17 U.S.C. § 411. *See* Exhibit "1".

31.     Defendants had notice of Plaintiff's rights through at least the credits indicated in the content of the motion pictures which bore proper copyright notices.

32.     Defendants also had notice of Plaintiff's rights through general publication and advertising associated with the motion pictures, and packaging and copies, each of which bore a proper copyright notice.

33.     The Work is a motion picture currently offered for sale in commerce.

20-025C

34. For example, a Blu-ray copy of the Work was recently available for sale at the retail store Walmart for $12.56, a price which is reflective of the nationwide price at Walmart for the Work.



35. The YTS website provides torrent files, many including the name "YTS" in their file names, that can be used by a BitTorrent protocol client application to download copyright protected content, including Plaintiff's Work.

36. Defendants used the YTS website to download the torrent file "The Brass Teapot 2012 [BluRay] [720p] [YTS] [YIFY]" associated with Plaintiff's Work.

20-025C

37.     The Defendants knew the torrent files they downloaded would be used to illegally download and share copies of the Work.

38.     The YTS website displays, "WARNING! Download only with VPN…" and further information warning users that their IP address is being tracked by the ISP and encouraging them to protect themselves from expensive lawsuits by purchasing service from a VPN on its homepage.  Upon information and belief, this warning has appeared on the YTS website since at least 2018.



39.     The term of use of the YTS website explicitly prohibit individuals in the United States of America from accessing or using the YTS website.  Upon information and belief, this restriction has been included in the terms of the YTS website since at least      October      of      2019.      *See*      Internet      Archive, https://web.archive.org/web/20191001181723/https://yts.lt/terms      [last      accessed      on September 25, 2020].



***B. Defendants Used BitTorrent To Infringe the Plaintiff's Copyrights.***

40.     BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

20-025C

41.     The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### 1. Defendants installed a BitTorrent Client onto his or her Computer.

42.     A BitTorrent Client is a software program that implements the BitTorrent Protocol.   There are numerous such software programs which can be directly downloaded from the Internet.

43.     Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

44.     Each of Defendants installed a BitTorrent Client onto his computer.

### 2. The Initial Seed, Torrent, Hash and Tracker

45.     A BitTorrent user that wants to upload the new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using, for example, the Client he or she installed onto his or her computer.

46.     The initial user or seeder of a file used a process referred to as "ripping" to create a copy of motion pictures from either Blu-ray or legal streaming services.

20-025C

47.     The initial seeder often modifies the file title of the Work to include a wording such as "RARBG" or "YTS" in the title of the torrent files and file copies in order to enhance a reputation for the quality of his or her torrent files and attract users to his or her piracy website.

48.     The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

49.     The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

50.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

51.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

52.     The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

53.     The tracker computer or computers direct a peer user's computer to other

14

20-025C

peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

54.    Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

### *3. Torrent Sites*

55.    "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol. There are numerous torrent websites including the YTS website.

56.    Defendants went to torrent sites including the YTS website to upload and download Plaintiff's copyrighted Work.

### *4.  The Peer Identification*

57.    The BitTorrent Client will assign an identification referred to as a Peer ID to the computer so that it can share content (here the copyrighted Work) with other peers.

58.    Each Defendant was assigned a Peer ID by their BitTorrent client.

### *5.  Uploading and Downloading a Work Through a BitTorrent Swarm*

59.    Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

60.    The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to

15

download the computer file.

61.     Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

62.     In this way, all of the peers and seeders are working together in what is called a "swarm."

63.     Here, Defendants participated in a swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

64.     In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

65.     Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

**6.  The Plaintiff's Computer Investigator Identified the Defendants' IP Addresses as Participants in Swarms That Were Distributing Plaintiff's Copyrighted Work.**

16

20-025C

66.    Maverickeye UG ("MEU") identifies the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

67.    MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

68.    MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

69.    The IP addresses, Unique Hash Numbers, and hit dates contained in Exhibit 3 accurately reflect what is contained in the evidence logs.

70.    The logged information in Exhibit 3 to the Arheidt decl. show that Defendants copied pieces of the Plaintiff's copyrighted Work identified by the Unique Hash Numbers.

***C. Defendants knew the Copyright Management Information included in the files they distributed to other peers had been removed or altered without the authority of Plaintiff.***

71.    A legitimate file copy of the Work includes copyright management information ("CMI") indicating the title.

72.    The initial seeder of the infringing file copies of Plaintiff's Work added the wording "YTS" to the file title to "brand" the quality of piracy files he or she released and attract further traffic to the YTS website.

17

73.     The word YTS is not included in the file title of legitimate copies or streams of the Plaintiff's Work.  The initial seeders of the Work altered the title to falsely include the words "YTS" in the CMI.

74.     The file copies Defendants distributed to other peers in the Swarm included the altered CMI in the file title.

75.     Defendants knew that the website from which they obtained their torrent files was distributing illegal copies of the Work.

76.     Defendants knew that YTS was not the author of Plaintiff's Work.

77.     Defendants knew that YTS was not a licensed distributor of Plaintiff's Work. Indeed, the YTS website includes a warning to this effect.

78.     Defendants knew that the CMI that included YTS in the file names was false.

79.     Defendants knew that the file copies of the Work that they distributed to other peers in the Swarm included the altered CMI without the authority of Plaintiff.

80.     Defendants knew that the CMI in the title they distributed to other peers in the Swarm included the altered CMI without the authority of Plaintiff.

81.     Defendants knew that the false or altered CMI in the titles would induce, enable, facility or conceal infringements of the Work when they distributed the false CMI, altered CMI or Work including the false or altered CMI.

82.     Namely, Defendants knew that other recipients would see the file titles and use the altered CMI to go to the website such as YTS from where the torrent files originated to obtained unlicensed copies of the Work

18

20-025C

83.     By providing the website in the altered CMI to others, Defendants induced, enabled and facilitated further infringements of the Work.

## VI. FIRST CLAIM FOR RELIEF
### (Direct Copyright Infringement)

84.     Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

85.     Plaintiff is the registered copyright owner of the Work which contains an original work of authorship.

86.     Defendants copied the constituent elements of the copyright protected Work *The Brass Teapot*.

87.     Defendants also publicly performed and displayed the copyright protected Work.

88.     By participating in the BitTorrent swarms with others, Defendants distributed at least a piece of each of the copyright protected Work to others.

89.     Plaintiff did not authorize, permit, or provide consent to Defendants to copy, reproduce, distribute, publicly perform, or display its Work.

90.     As a result of the foregoing, Defendants violated the Plaintiff's exclusive rights to reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501.

91.     As a result of the foregoing, Defendants violated the Plaintiff's exclusive rights to distribute copies of the Work in copies, in violation of 17 U.S.C. §§ 106(3) and 501.

92.     As a result of the foregoing, Defendants violated the Plaintiff's exclusive

20-025C

rights to perform the Work publicly, in violation of 17 U.S.C. §§ 106(4) and 501.

93.     Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

94.     The Plaintiff has suffered damages that were proximately caused by each of the Defendants' copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

### VIII. SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon participation in the BitTorrent Swarm)

95.     Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

96.     By participating in the BitTorrent swarms with others, Defendants induced, caused or materially contributed to the infringing conduct of the copyright protected Work *The Brass Teapot* by others.

97.     Plaintiff did not authorize, permit, or provide consent to the Defendants inducing, causing, or materially contributing to the infringing conduct of others.

98.     Defendants knew or should have known that the other BitTorrent users in a swarm with them were directly infringing the Plaintiff's copyrighted Work by copying constituent elements of the registered Work that are original.  Indeed, Defendants directly participated in and therefore materially contributed to others' infringing activities.

99.     The Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

100.    By engaging in the contributory infringement alleged in this Complaint, the

Defendants deprived not only the producers of the Work from income that could have been derived when the respective film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets and their employees, and, ultimately, the local economy.  The Defendants' misconduct therefore offends public policy.

### VIII. THIRD CLAIM FOR RELIEF

### (Digital Millennium Copyright Act Violations)

101.    Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

102.    Defendants knowingly and with the intent to induce, enable, facilitate, or conceal infringement of the copyright protected Work *The Brass Teapot* distributed copyright management information ("CMI") that falsely included the wording "YTS" in violation of 17 U.S.C. § 1202(a)(2).

103.    Defendants, without the authority of Plaintiff, or the law, distributed removed or altered CMI knowing that the CMI had been removed or altered to include the wording "YTS" without the authority of Plaintiff and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of copyright protected Work *The Brass Teapot* in violation of 17 U.S.C. § 1202(b)(2).

104.    Defendants, without the authority of Plaintiff, or the law, distributed Plaintiff's Copyright protected Work *The Brass Teapot* knowing that the CMI had been removed or altered to include the wording "YTS", and knowing, or having reasonable grounds to know,

20-025C

that it will induce, enable, facilitate, or conceal infringement of the copyright protected Work in violation of 17 U.S.C. § 1202(b)(3).

105.   Particularly, the Defendants knew that the CMI in the file names of the pieces had been altered to include the wording "YTS".

106.   Particularly, the Defendants distributed the file names that included CMI that had been altered to include the wording "YTS".

107.   Defendants knew that the wording "YTS" originated from the notorious movie piracy website for which each had registered accounts.

108.   Defendants' acts constitute violations under the Digital Millennium Copyright Act, 17 U.S.C. § 1202.

109.   Plaintiff is entitled to an injunction to prevent Defendants from engaging in further violations of 17 U.S.C. § 1202.

110.   Plaintiff is entitled to recover from Defendants the actual damages suffered by Plaintiff and any profits Defendants have obtained as a result of their wrongful acts that are not taken into account in computing the actual damages. Plaintiff is currently unable to ascertain the full extent of the profits Defendants have realized by their violations of 17 U.S.C. § 1202.

111.   Plaintiff is entitled to elect to recover from Defendants statutory damages for their violations of 17 U.S.C. § 1202.

112.    Plaintiff is further entitled to costs and reasonable attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court:

20-025C

(A) enter permanent injunctions enjoining Defendants from continuing to directly infringe and contribute to infringement of the Plaintiff's copyrighted Work;

(B) enter an order pursuant to 17 U.S.C. §512(j) and/or 28 U.S.C §1651(a) that any service provider providing service for Defendants which they used to infringe Plaintiff's Work immediately cease said service;

(C) award the Plaintiff its actual damages from the copyright infringements and Defendant's profits in such amount as may be found; alternatively, at Plaintiff's election, for statutory damages per Work pursuant to 17 U.S.C. § 504(a) and (c);

(D) award the Plaintiff its actual damages from the DMCA violations and Defendants' profits in such amount as may be found; or, in the alternative, at Plaintiff's election, for statutory damages per DMCA violation pursuant to 17 U.S.C. § 1203(c) for violations of 17 U.S.C. § 1202;

(E) award the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) grant the Plaintiff any and all other and further relief that this Court deems just and proper.

The Plaintiff hereby demands a trial by jury on all issues properly triable by jury.

DATED: Kailua-Kona, Hawaii, February 2, 2021.


/s/ Kerry S. Culpepper
Kerry S. Culpepper
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740

23

20-025C

Telephone:    (808) 464-4047
Facsimile:    (202) 204-5181
E-Mail:        kculpepper@culpepperip.com
Attorney for Plaintiff Laundry Films, Inc.

20-025C